oral argument not to exceed 15 minutes per side. Ms. Shusky, you may proceed for the appellant. May it please the court, Katherine Shusky on behalf of Joshua Fortson. I'd like to reserve three minutes for rebuttal. Very well. I'd like to focus my argument today on the third claim that I raised in the brief about the district court's error in admitting Mr. Fortson's proffer statement against him at trial. Mr. Fortson's statement was inadmissible at trial for two independent but related reasons. First, it was protected as a part of a plea agreement. And second, there's no evidence that Mr. Fortson knowingly and intentionally waived his Fifth Amendment right against self-incrimination. The admission of his statement was prejudicial and reversible error. Fortson's proffer statement was inadmissible because it was part of plea negotiations. The district court incorrectly concluded that it was objectively unreasonable to believe that it was a plea negotiations because there was no government attorney involved. But that just pays lip service to the totality of the circumstances analysis that the court is required to do. I think it's important to take a step back and walk through that the rule does require that it makes a statement that the prosecuting attorney needs to be involved. But that does not end the analysis. And we see that both from the committee notes from the rule, the policy reasons behind that rule, and the case law that supports that that is not a per se exclusion. There has to be some authorization by the prosecutor to those involved in the meeting. I mean, the prosecutor's got to have some role in this, right? Our position is no. Officers can just can just go in and negotiate this and then tell the prosecutor later we worked out this deal. The problem is that they don't have the authority to do that. But when they, in this kind of case, when they walk in and present evidence that they think they have the authority to do that, that they know that the defendant has a reasonable expectation that that's what they're doing, and they don't correct that misunderstanding, then I think they are on the hook for this being as part of plea negotiations. So what is your best case for that proposition? So the cases are all different. What I would cite the court to is it's a district court case, and I'm not going to pronounce it correctly, Sweden, S-W-I-D-A. Where is it in your brief? It's cited in my brief. I don't have the page number, but I can get it for you on rebuttal. But it is cited in the brief. So that, of course, doesn't have any, that's not binding on us, but you think that it's persuasive. Is that right? That's correct. And this court has cited that case in both Cross and in Little, I believe. U.S. v. Sweden from Eastern District of Michigan, 1988? Yes, that's correct, Your Honor. Okay. So I do think it's important just to take a step back and to walk through sort of the steps here. So in 1978, the Fifth Circuit in Robertson adopts this two-part test, this subjective test and the objective test. And the point was, as the court pointed out in that case, it's the policy, right? The reason why the criminal cases, it's important to have plea negotiations. It's important to the criminal justice system. And for plea negotiations to work, there needs to be an expectation from the defendant that these statements aren't going to be used against him later. Then in 1979, so a year later, the rule changes, right, and adds a prosecuting attorney. And the committee note, and I will read this because it's important, the committee note says, this change, it must be emphasized, does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have the authority to bargain, are inevitably admissible. And it goes on to talk about that's just not per se covered by the rule, but that it needs to be resolved by the body of case law. That body of case law includes what the committee would have already understood under the Robertson test. Is there anything here that the officer said that gave the impression that he had the authority of the prosecuting attorney? I think it comes from the statements that Mr. Fortson made through his girlfriend, Jasmine White, and the agent's response to those text messages that lead to the problem here. So the agents come out to meet Mr. Fortson. They read him as Miranda writes the first time. What did the agent say in the text message? Did they say yes or okay? They say okay. Tell me again. What did she text, and then he said yes? So the text messages are long from her, and you can find them in the government's motion in Lemonay, right? And I don't have the docket number, but I have a page ID, 493. So the first messages come in that say, from Ms. White say, so you guys want Josh to give you the Mexicans. Okay, what he needs you to do is to roll up his Stark County case, his parole violation, and the stuff you just found in his house, roll that all up into one and get that taken care of. Then you need to get him out of jail so he can go work for you and get whoever you want. He has all these connections. He can get all these people for you. The agent's response to that slew of text messages from Ms. White was okay. And then the meeting happens, right? The agent who was leading that. The same agent who texted that? Yes. And what's the timeline? I know that the text messages came in about the 26th, and then I think they met a couple weeks later. I can't remember exactly, but it's in a short period of time. But then there's no communication from the agents with Mr. Fortson except for when they get there. And then what the other problem is, the other agent, the one who's leading the questioning here, is under the impression that this is a proffer agreement. And so his report is attached to the government's. It doesn't communicate that to the attendees of the meeting, your client or a client's lawyer. They don't remember. Okay, so there's no affirmative evidence that he indicated to them that this is a proffer. That's correct. But there is evidence that he believed that it was. Does his subjective belief matter for what the defendant and the defendant's lawyer thought the purpose of the meeting was? I think it informs how that meeting went. Because the agents didn't have a clear memory because it had been five years before. They didn't have a clear memory of what was said. In fact, Nicolino says, I don't remember if the word proffer was used. I mean, just back to your first point, the rule requires a lawyer. The rule requires communications with a prosecuting attorney. And there might be some flexibility on that, but you're saying the flexibility is a discussion between a defendant's girlfriend, text message, and an officer who writes okay, that that's enough. That now is the blessing of the prosecuting attorney essentially. No, that's not my point. I mean, that's what I understood you to say, and that seems like a big stretch. I think there's more in the record. Okay, I thought you said there were two things. There was the communication with the girlfriend, and then there was the actual meeting. That's the start, right? So then the meeting is- You agree that the communication with the girlfriend itself would not be enough. I think the communication from the girlfriend to the agent, the agent's response of just okay, is enough to satisfy the subjective belief that Mr. Fortson thought that he was participating in plea negotiations. Also, he had- That substitutes for the participation of a prosecuting attorney. I think the test is the Robertson test, right? Is there a subjective belief from the defense attorney- I'm sorry, the defendant that this is a plea negotiation, and under the totality of the circumstances, is that objectively reasonable? We think that Robertson doesn't fully apply going forward because the rule materially changed to add this prosecuting attorney authority. But that is not what the Sixth Circuit has said both in Cross and in Little, and those happened 13 and 14 years after the rule change. And, in fact, in Cross, the court said we have no reason to believe that Robertson would not remain the correct approach after the 1979 amendment. So the court considered that amendment, considered the policy reasons behind the rule, and concluded that the Robertson test is still the one to follow. So just to cut you off, you said there was more evidence. There was this text message, we have the meeting where the officer thinks something. What's the other evidence? Well, the evidence is the way that that meeting happened, right? So the agent who went in and believed it was a proffer, and we can see this by his report that's attached to the government's trial brief, where it says proffer all over it, that the meeting happened pursuant to a proffer agreement. Now, we don't know that he made that statement to Mr. Fortson because he couldn't remember if he did or not. But we do know what Agent Schmidt testified to was that, I wouldn't have told him that his statement couldn't have been used against him, nor would I have really talked about the proffer agreement at all. I just would have assumed that that was all everybody, we were all on the same page, and I went in and started asking these questions, right? So he conducted. But there was not questioning, wasn't there? Didn't the agent say that their primary role was to sit there and listen? That is what they testified to, and that is not supported by the record. What I would point to is at page ID 1122, Agent Schmidt testifies that he didn't advise Fortson about his limited role, about his inability to negotiate a proffer or anything like that. He said he didn't address that with Mr. Fortson, but then he also said, I went right into questioning, right? And so he even said, I just rolled right into the questioning. I didn't talk about what my limitations were. I just said, this is the information I want to know from you. We also know that the reason why that meeting happened is because they wanted, and we know this from both agents' testimony, they wanted information about Mr. Fortson's suppliers. They had to go in and ask questions. We also know they asked questions because they brought pictures, right? And you can read the report of Agent Schmidt that talks about all the information that was given, that the pictures were provided, that Mr. Fortson identifies certain people, all this sort of thing. Of course there were questions, and these questions were incriminating to Mr. Fortson. So it's ridiculous that they would have said, well, we were just there to listen. They were there to question him, and they were there to question him specifically about his suppliers, which necessarily would have incriminated him. He had a lawyer with him, correct? He did, yes. The lawyer never at all raises this issue, inquires about this, about the, you know, finding nature of the plea or what the statements would be used for, if anything? That's correct, which leads to the conclusion that it was reasonable that everybody believed this was a proffer and these were protected. The lawyers didn't do a very good job. I mean, that's a stretch. I think to have an attorney sit there and not be comfortable that all the information that your client is providing, when there are charges pending. The lawyer knows that the girlfriend sent a text to the officer? Does the lawyer know that, I assume? Yes. Okay, so the lawyer is basing it on the girlfriend's text to the officer and the one-word response from the officer, and that's enough. Obviously this is a proffer. The agents did call the attorney and set up the meeting. Did they use the word proffer ever? Nobody remembers. Is there anything in the record as to whether there's any common practice or even any practice of having a proffer with no prosecuting attorney present? There's nothing in the record. I can tell you anecdotally that the county does a variety of things and it's not always. In the federal system, there's usually a proffer letter. There's a discussion about, in that proffer letter, what their defendants' rights are and what they're waiving and what can expect to happen. That doesn't translate into state practice, and that's who was with him as a state attorney. Okay. Thank you. You have your rebuttal time. Thank you. Good morning, Your Honors. May it please the Court, Laura Ford on behalf of the United States. The district court in this case properly ruled on admissible evidence in this case and found that Fortson's voluntary pre-indictment interview statements were admissible as trial evidence. Rule 410 of the Rules of Evidence limits the admission of statements made during plea discussions with the attorney for the prosecuting authority, and those conditions simply were not present here. There was no AUSA present during this meeting. The AUSA was not involved in arranging this meeting. And there was no authority granted to the- Is it the United States' position that you have to have a prosecuting attorney at a proffer? No, Your Honor, it's not, but if you have to have- So you could deputize an agent beforehand, the prosecuting attorney could. Agreed, and I think the case law supports that, that it's a little more flexible than what the rule would suggest, but you have to have more than what you had in this case. There was no expectation that was created by the agents that would give any indication that they were there acting on behalf of the prosecutor in this case. So as a practical matter, I hear what you're saying, and you obviously need the prosecuting attorney to have some involvement in this, but as a practical matter, what would be the reason for this meeting? Well, in this case, Fortson said that he wanted- and I guess I'll go back to the girlfriend initially had contacted the agents, and there was a question about that. That was on March 27th at page ID 1080- Well, yeah, from that exchange, it would seem that he wanted to do something to help himself. To help himself, but generally the expectation or the mere desire of wanting to help yourself- It's a proffer, though, isn't it? I'm sorry? That would only happen through a proffer. Not necessarily. I mean, here there was no negotiation. That was the key. I mean, sometimes defendants choose to try to speak with investigators, and the record is not clear in terms of what the motivation exactly was, but certainly Fortson had never been charged before in federal court. He was picked up on a probation violation. That's what Nicolino testified that he thought he was being detained for. So, I mean, certainly one motivation would be to try to keep this out of federal court. So let me ask this. So if it's not a proffer, and I would tend to agree with you, it probably isn't, because you don't have a prosecutor saying, yes, you're authorized to do this and get the information, we might be able to have some leniency here, then why wouldn't the agents or the officers mirandize him? They had previously mirandized him, and he said, I don't want to speak with you unless I have my lawyer. So this- Well, there was a significant amount of time that had gone by in between that arrest, and when this happened, I think it was like weeks. Exactly. It was probably about six weeks, because I think he was arrested in early March. I think they tried to speak with him on March 8th, and then the interview was on April 2nd. I'm sorry, not April 2nd, April 12th. So, yes, a significant time had passed, but it was under the very conditions that he said he would speak with them. He said, I won't speak with you without my attorney. His attorney was present, and, in fact, it was not the agents that reached out to his attorney at Page ID. I believe it's 1084. It was the attorney who called Nicolino to schedule this meeting. There's no dispute I think it would be the better practice to remirandize him, but at this point, I mean, you're advising him, you have the right to counsel, who's right next to you. And there's certainly, I mean, he has his attorney with him. He's free to ask his attorney questions. He's free to terminate the questions at any time. This was a short interview. There was never any discussion about charges, and I think we have to look at what Fortson's expectation was in this case and whether that's objectively reasonable. In this case, he never testified about what his expectation was in the court. The district court was quite generous in kind of crediting his expectation, even though he didn't testify, but ultimately found that just the mere hope of trying to garner some leniency isn't enough in this case, and he was not. I mean, this is pre-indictment. There's no complaint. There's no information. There's no proffer agreement. There's no discussion of a proffer agreement. And when you look at what he is expecting in this case, he doesn't ask about the agent's authority to negotiate on behalf of the prosecutor. There's no discussion about charges that he was going to plead guilty to federal or any state charges, for that matter. And so there was simply nothing that was exhibited on Fortson's part that would suggest that he believed that he was negotiating a plea agreement in this case, and the court also noted that there wasn't really any dealings with these agents previously, other than when they tried to interview him before, and he said, I don't want to speak with you unless I have my attorney. So there was nothing. Your friend on the other side didn't mention the standard of review. Do you agree this is clear error review, the judge's fact-finding? I believe, well, in terms of admissibility, I think that's always an abuse of discretion. Your friend on the other side says in her brief, the district court committed clear error when finding it objectively unreasonable to believe that Fortson's interview was part of a plea negotiation. Is she wrong about that? I believe that it would be abuse of discretion. If it's fact-based finding, that's always clear error. And when you look at the court crediting the testimony that, hey, these agents never used the word proffer agreement, that is a fact-based finding. That would be clear error analysis, and Fortson has not shown that the court clearly erred in crediting the agent's testimony that there was no discussion of a proffer agreement in this case. I guess the one thing I also want to argue is I don't believe that these statements were prejudicial and was simply hanging on that this was a clearly erroneous finding. But that is not supported by the record. The court properly credited the agent's testimony, Agent Schmidt, about having a misunderstanding about the term proffer agreement. He was a new agent. I believe this was his first case kind of solo. He was a rookie agent, so I would say he's still getting federalized, and so he believed that any time you met with a suspect, with his attorney, that this was a proffer agreement. But he did not use that term with Fortson. This was used in an internal report, a DEA-6, after the meeting, and so that was not – Fortson would have no reason to know that there was that misunderstanding where it wasn't communicated to him. But he did believe it was a proffer. That was his testimony? He believed that any time you met with a defendant and his attorney, it was considered a proffer, but he said, in hindsight, I would have just called it an interview. Now I know that's not this term proffer agreement. But if you believe it's a proffer, why would you believe you needed to even say that it's a proffer in the meeting itself? If you go in with the expectation that it's a proffer, why is it even relevant whether he said whether it's a proffer or not in the interview? That's what I'm trying to get at. Because it seems like if that's your assumption, you're not going to talk about something that you assume everyone is agreeing upon, a fact that everyone agrees upon. You don't necessarily have to bring that up in the meeting, do you? Well, I would agree with that, but he wasn't thinking about it in the sense of what is commonly understood as a proffer agreement in terms of being part of plea negotiations. He was thinking about it in this casual sense, that it's any time I meet with a suspect and his attorney. So he thought that's how you refer to it, and so that's why he referred to it in his report afterwards. So he wasn't using it. You're saying he wasn't using it in the sense of importing all the legal significance that we attach to the word proffer. Correct.   And now that he's thinking about it in that legal sense, he said, oh, no, no, I would not have used that term if I were writing that today. I would have just called it an interview because that's what it is. That's what I viewed it as. I just used the wrong term. I was a new agent at that time. I didn't really understand that that's not what it really means. Turning to the circumstances of this meeting, it was relatively short. It was about a couple hours. Fortson had his counsel with him. There was nothing during this meeting that was coercive or that would have created an expectation that these were plea negotiations. And with respect to the girlfriends, going back to before this meeting, the statement that we just want to make this all go away, Nick Lino had testified that he believed that Fortson was being detained for a parole violation. Schmidt testified that he didn't know what charges would be filed at this point, and this interview was well before any charges were filed. Those are in the record at page 1088 and 1113. The court properly credited those statements, and Fortson has not shown that the court clearly erred in finding that they didn't have any reason to believe that there were any federal charges pending at that point. Unless this court has further questions about this issue or any of the other issues that were raised in the brief, we would respectfully ask that this court affirm the district court's finding that these were properly admissible statements that were not precluded by Rule 410 of the Rules of Evidence. Thank you. Thank you, Your Honors. Just to confirm with counsel, you agree it's a clear error standard? Yes, I do. A couple of points on rebuttal. First of all, the agents did testify, Nick Lino specifically testified, that they understood that Mr. Fortson believed that he was having this interview, this proper session, for the purpose of a benefit. They made no attempt to correct his misunderstanding. They did not Mirandize him, which would have corrected his misunderstanding. They chose not to do that. They didn't mention the proffer at all because they said, well, it's just a proffer statement or a proffer agreement, so we just don't talk about that. Well, what about the government's point that, one, he had been Mirandized previously, and during this meeting, he's got counsel sitting right there with him? The presence of counsel doesn't negate the opportunity for Mr. Fortson to invoke his Fifth Amendment right against self-discrimination. Well, right, but he had been Mirandized before, so he knew what his rights were. Right, and the circumstances have changed. And so the case law says if the circumstances change in between the first meeting and the second meeting, he needs to be re-Mirandized. What was the circumstance that it changed? Right, so those were the direct offer through Ms. White that I will cooperate if you do these things for me, right, if you wrap all these cases up. And the government or the agent's testimony that they didn't know that charges were pending is false because Ms. White tells them they are. Ms. White says you've got to wrap up the Stark County case, the parole violation, and the stuff that was found in the house, and take them all together, roll them all together and take care of them. They knew that he had been moved from the one county jail to the Stark County jail because the state case had been charged. So it's not credible that they would say that they didn't know charges were pending. Ms. White told them they were pending and they went to the other jail because he had been moved because of those pending charges. The fact that there were no federal charges pending doesn't matter. There were state charges pending. And even I argue in my briefs it doesn't even matter if the charges are pending or not. We often prefer clients on a target letter when there aren't charges pending, but we know they may be coming. I want to point to the court, to the exhibit, to the government's trial brief where even the trial brief for the government, the AUSA files in their trial brief that they understood that this was a proffer agreement and that it would only be admissible for impeachment purposes pursuant to a proffer agreement. They don't change their mind until a month later when they say, oops, we were wrong too, that this is no longer a proffer agreement, we think it's a confession. And in that report, notably, Schmidt, who says, oops, I didn't really know what they meant, says, prior to this meeting, Fortin agreed to a proffer agreement with the U.S. government. This is not a mistake. This report was he had an agent with him that was a supervising agent. His agent, supervising agent, reviewed the report, made no corrections whatsoever. Everybody was under the understanding that this was a proffer agreement. For these reasons, I would ask the court to reverse and remand. Thank you. Thank you. We'll take the case under submission. The clerk may call our last case today.